UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| JOSEPH CREAM, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>NORTHERN LEASING SYSTEMS, INC., et al.,<br><br>    Defendants. | Case No.  15-cv-01208-MEJ<br><br>**ORDER DENYING MOTION TO DISMISS COMPLAINT; ORDER TRANSFERRING CASE AND STAYING TRANSFER PENDING SUPPLEMENTAL BRIEFING**<br><br>Re: Dkt. No. 16 |

## INTRODUCTION

Plaintiffs Joseph Cream, Jr., Amanda Cream, Cathy Cream, and Fernando Carillo ("Plaintiffs") bring this action alleging that Defendants[1] fraudulently induce small business owners like Plaintiffs to lease credit card machines under undisclosed and onerous terms.  First Am. Compl. ("FAC") ¶ 1, Dkt. No. 13.  Defendants Northern Leasing Systems, Inc., Lease Finance Group, LLC, CIT Financial USA, Inc., Lease Source, Inc. and Jay Cohen (collectively, "Defendants") move to dismiss the FAC pursuant to Federal Rule of Procedure 12(b)(3) on the ground that this is not the proper venue to hear Plaintiffs' claims because they are subject to forum-selection clauses requiring that actions be filed in the jurisdiction of New York (and one in Illinois).  Dkt. No. 16 ("Mot.").  Plaintiffs filed an Opposition (Dkt. No. 23), and Defendants filed a Reply in which they asked the Court to construe their Motion to Dismiss as a motion to transfer venue in the event the Court was not inclined to dismiss the matter (Dkt. No. 28 at 3).  The Court

---

[1] Plaintiffs named as Defendants Northern Leasing Systems, Inc, Lease Finance Group LLC, EVO Merchant Services, LLC, EVO Payments International, LLC, Allen & Associates, Lease Source Inc., Lease Source-LSI, LLC, CIT Financial USA, Inc, Jay Cohen, Peter S Cohen, Ron G Arrington and Does 1-100.

finds this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendants' Motion to Dismiss but **GRANTS** their request to transfer for the reasons set forth below. Additionally, the Court hereby **STAYS** the transfer pending further briefing by the parties as ordered below.

## BACKGROUND

Neither Defendants nor Plaintiffs provided much of a factual background in their briefing, so the Court provides only a brief introduction about the facts giving rise to this case, based on Plaintiffs' 46-page FAC.

According to Plaintiffs, Defendants claim to be in the business of financing equipment for small businesses through so-called "equipment finance lease" contracts. FAC at 6. Typically, the "equipment" is a point-of-sale credit card swiping machine. *Id.* Defendants, through their own representatives or third party salesmen, approached Plaintiffs about leasing these machines. *Id.* After making a successful sales pitch, these salesmen obtained Plaintiffs' signatures, with personal guarantees, on the Lease and Personal Guaranty which was drafted and prepared by Defendants. *Id.* Plaintiffs allege that they did not receive a copy of their agreements and that they were unaware of the existence of the additional pages or the onerous terms contained in the agreements. *Id.* at 6-9.

Plaintiffs allege that they signed fifteen lease agreements in total, referring to fourteen of them by their specific lease number. *Id.* at 9-24.

Plaintiffs allege that through each lease agreement, Defendants leased them this equipment at a cost of between $3.839.52 and $4,799.52. *Id.* Plaintiffs later discovered that the same equipment was available for purchase for less than $500. *Id.* at 6-7. The lease agreements also provided that tax and insurance could be charged to Plaintiffs in an amount not specified. *Id.* at 9-24. Plaintiffs allege that Defendants took automatic debits out of Plaintiffs' bank accounts every month, at rates considerably higher than the amounts specified in the leases. *Id.*

The lease agreements contain forum-selection clauses, which Plaintiffs' FAC alleges specify New York as the chosen forum. *Id.* at 9.

Plaintiffs filed this action on March 13, 2015 (Dkt. No. 1), amending their Complaint on March 30, 2015. In their FAC, they allege the following claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962; (2) violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693; (3) violation of the Fair Debt Collection Practices Action, 15 U.S.C. § 1692; (4) Fraud; (5) Negligent Misrepresentation; (6) Concealment; (7) Money Had and Received; (8) Unjust Enrichment; (9) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200 et seq.; and (10) violation of California's False Advertising Law, Cal. Bus. & Prof. Code section 17500 et seq.

Defendants filed their Motion to Dismiss on May 1, 2015, providing copies of the lease agreements through a Request for Judicial Notice. *See* Dkt. No. 16-4 (Req. for Judicial Notice and attachments). On June 26, 2015, the Court vacated the hearing on Defendants' Motion and, pursuant to Civil Local Rule 7-5, ordered Defendants to authenticate the lease agreements by affidavit or declaration to support their Motion. Dkt. No. 37 ("Order"). Defendants timely responded on July 10, 2015, providing the Declaration of Lina Kravic, Director of the Originations Department at Defendant Northern Leasing Systems, Inc. Dkt. No. 38, ¶ 1. Plaintiffs timely objected to the Declaration on July 17, 2015. Dkt. No. 39.

### REQUEST FOR JUDICIAL NOTICE

As discussed in the Court's June 26 Order, the Court will not take Judicial Notice of the lease agreements submitted by Defendants with their Motion. *See* Order at 2. Nonetheless, courts regularly accept such evidence in determining motions to transfer based on forum-selection clauses. *See* Order at 3 (collecting cases). The problem, however, is that Defendants did not initially file authenticated copies of those agreements. *See id.* (citing Civil L.R. 7-5, requiring that evidentiary matters be "appropriately authenticated by an affidavit or declaration."); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002) ("an inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility." (citation omitted)).

Defendants have now filed the lease agreements with the Declaration of Lina Kravic. Kravic, in addition to being the Director of the Originations Department at Defendant Northern Leasing Systems, states that she is "one of the custodians" of their records. Kravic Decl. ¶¶ 1 & 6.

She explains that Northern Leasing Systems is "the authorized servicing agent for the leases it originates, as well as certain leases originated by [Lease Source, Inc.] and [CIT Financial USA, Inc], including the Leases" connected with Defendants' Motion. *Id.* ¶ 5. She states that she has "personal knowledge that these records and documents relied upon and referenced herein were made in the ordinary course of business, were made at or near the time or occurrence of the events of they are of record, and are made by persons who have a business duty to [Northern Leasing Systems] to made such records." *Id.* ¶ 7.

Plaintiffs object on the ground that Kravic's Declaration does not state how long she has worked for Northern Leasing Systems, and there is no evidence that it employed her during the years from 2007-2012 when Plaintiffs allegedly signed the contracts. Pls.' Objections at 1-2. Additionally, Plaintiffs challenge the foundation for her knowledge of Defendant's "ordinary course of business," including how she knew the individuals who signed the contracts on behalf of Defendants or how she knows how the contracts were collected and stored. *Id.* at 2.

Kravic explains that her "responsibilities include supervision and control over the NLS employees and operations involved in the origination of lease accounts, as well as managing its risk department and monitoring NLS relationships with the independent equipment vendors, suppliers and distributors doing business with the companies under their vendor equipment finance programs." Kravic Decl. ¶ 6. As such, she states she is "very familiar with LSI, CIT, and NLS' record keeping procedures in the originations and servicing of such accounts." *Id.* She also declares that she has personal knowledge that the documents were made in the ordinary course of business. *Id.* ¶ 7. Thus, although the Court does not take judicial notice of the lease agreements, for purposes of this Motion, the Court finds Defendants properly authenticated them through Kravic's Declaration. *See Memry Corp. v. Kentucky Oil Tech., N.V.*, 2007 WL 2746736, at *6 (N.D. Cal. Sept. 20, 2007) ("Kipperman's declaration states that he has personal knowledge that these agreements are maintained in the course of ordinary business activities and that he, as a director-level employee of Abbott, directed the documents to be retrieved from Abbott's files. This is sufficient to satisfy the court that the documents are what they are represented to be. Fed. R. Evid. 901(a).").

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case

for improper venue. Venue is generally proper in a district where, among other things, "a

substantial part of the events . . . giving rise to the claim occurred" and where the defendant

corporation does business. 28 U.S.C. § 1391(b)(2), (c). However, as the Supreme Court recently

explained in *Atlantic Marine Construction Company, Inc. v. United States District Court*, __ U.S.

__, 134 S.Ct. 568, 577 (2013),

> [w]hen venue is challenged, the court must determine whether the
> case falls within one of the three categories set out in [28 U.S.C. §]
> 1391(b). If it does, venue is proper; if it does not, venue is improper,

> and the case must be dismissed or transferred under § 1406(a).
> Whether the parties entered into a contract containing a forum-
> selection clause has no bearing on whether a case falls into one of

> the categories of cases listed in § 1391(b). As a result, a case filed in

> a district that falls within § 1391 may not be dismissed under §
> 1406(a) or Rule 12(b)(3).

Accordingly, Rule 12(b)(3) is "not [the] proper mechanism[ ] to enforce a forum-selection

clause[;]" rather, "[Section] 1404(a) and the *forum non conveniens* doctrine provide appropriate

enforcement mechanisms." *Id.* at 580 (footnote omitted); *see also Niburutech Ltd. V. Jang*, __ F.

Supp. 3d __, 2014 WL 6790031, at *1 (N.D. Cal. Dec. 2, 2014) (same); *T & M Solar & Air*

*Conditioning, Inc. v. Lennox Int'l Inc.*, __ F. Supp. 3d __, 2015 WL 1289497, at *6-7 (N.D. Cal.

Mar. 20, 2015) (same).

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented." 28

U.S.C. §1404(a). This provision provides a mechanism for enforcement of a forum-selection

clause and "a proper application of § 1404(a) requires that a [valid] forum-selection clause be

given controlling weight in all but the most exceptional cases." *Atl. Mar. Constr. Co.*, 134 S.Ct. at

579 (internal quotation marks omitted). In other words, where there is a valid forum-selection

clause in a contract between the parties, "the interest of justice" is best served by giving effect to

the parties' bargain. *Id.* at 581-83 ("In all but the most unusual cases, therefore, 'the interest of

justice' is served by holding parties to their bargain.").

A valid forum-selection clause thus alters the § 1404 analysis in three ways. *Id.* at 581-82. "First, the plaintiff's choice of forum merits no weight." *Id.* at 582. Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. *Id.* "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations ." *Id.*

The Supreme Court recognized its "analysis presupposes a contractually valid forum[ ] selection clause." *Id.* at 579 & n.5. Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co. (Bremen)*, 407 U.S. 1, 10 (1972). Courts may find a forum-selection clause unreasonable and unenforceable if: (1) its inclusion was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so "gravely difficult and inconvenient" the complaining parties would "for all practical purposes be deprived of [their] day in court[;]" or (3) enforcement would contravene a strong public policy of the forum in which the suit is brought. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *Bremen*, 407 U.S. at 12-13). "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (citing *Bremen*, 407 U.S. at 17).

In resolving motions to dismiss or transfer based on a forum-selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis. *Argueta*, 87 F.3d at 324 (citations omitted); *see also Doe 1*, 552 F.3d at 1081 (in considering a motion to enforce a forum-selection clause "pleadings need not be accepted as true, and facts outside the pleadings may be considered."); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984) ("Absent some *evidence* submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or such serious

inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties." (citing *Bremen,* 407 U.S. at 12-19 (emphasis added))).

**DISCUSSION**

As an initial matter, as discussed above, the Supreme Court's 2013 decision in *Atlantic Marine* holds that the appropriate method for enforcing a valid forum-selection clause is the use of transfer to the contractually selected forum under 28 U.S.C. § 1404(a). 134 S.Ct. at 575; 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2015). Although there are fourteen different leases involved in this case, the forum-selection clauses are all mandatory, [2] using non-permissive terms to require that prosecution and litigation arising out of leases and guarantees be brought in New York or, in the one instance, Illinois. *See* Kravic Decl., Exs. A-N (the lease at Ex. A provides for Illinois jurisdiction, whereas the other leases provide for New York jurisdiction). Consequently, the Court applies the rule in *Atlantic Marine*, and given that Defendants did not argue that California is an improper venue for any reason other than the forum-selection clauses, construes Defendants' motion as a motion to transfer pursuant to § 1404(a). *See also* Reply at 2 (requesting the Court construe Defendants' Motion to Dismiss in the alternative as a motion to transfer).

"Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const.*, 134 S. Ct. at 581. The Supreme Court did not specify what sort of "extraordinary circumstances" might qualify to deny such a motion. In any case, Plaintiffs have raised a number of arguments as to why Defendants' motion should be

---

[2] "Although *Atlantic Marine* never addressed the 'permissive' versus 'mandatory' distinction, district courts across the country have generally limited the *Atlantic Marine* framework to situations where the forum selection clause is mandatory." *Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Parish*, 2014 WL 4403447, at *12 (E.D. La. Sept. 5, 2014), *motion to certify appeal on this issue granted sub nom. Waste Mgmt. of Louisiana, L.L.C. v. Parish*, 2014 WL 5393362 (E.D. La. Oct. 22, 2014); *see also Karl W. Schmidt & Assocs., Inc. v. Action Envtl. Solutions, LLC*, 2014 WL 6617095, at *5 (D. Colo. Nov. 21, 2014); *Fin. Cas. & Sur., Inc. v. Parker*, 2014 WL 2515136, at *3 (S.D. Tex. June 4, 2014) ("District courts across the country have . . . recognized that the analysis on a motion to transfer based on a forum-selection clause begins with whether the clause is mandatory or permissive. If the forum-selection clause is permissive, the courts have consistently declined to apply *Atlantic Marine*.").

denied, discussed below.

## A. Concealment and Fraudulent Inducement

First, Plaintiffs contend that "they were never informed they had to litigate any disputes in New York[,]" and "this fact was concealed from Plaintiffs because Defendants' did not give Plaintiffs a copy of the document they allegedly signed." Opp'n at 8 (citing J. Cream, Jr. Decl. ¶¶ 4, 7, Dkt. No. 23-2). Consequently, they argue that "[b]ecause Plaintiffs did not know about the alleged forum selection clause until after Defendants were making unauthorized withdrawals from their bank accounts, the Forum Selection Clause is not presumptively valid." *Id.* at 7. In support of their argument, Plaintiffs submitted the Declaration of Joseph Cream, who appears to have signed eleven out of the fourteen agreements. *See* Kravic Decl, Exs. A, D-M. But they did not provide declarations from the other Plaintiffs, including Cathy Cream and Fernando Carrillo, who also appear to have signed agreements (*see id.*, Exs. B-C, N). In his Declaration, Joseph Cream states that Defendants sent him copies of the contracts he purportedly signed, but he is "not sure the alleged contracts which Defendants provided me after the fact were actually what I signed." J. Cream, Jr. Decl. ¶ 4. He notes that "[a]t least one of the alleged signatures does not appear to be mine." *Id.*

Second, Plaintiffs suggest that the agreements are invalid because Defendants fraudulently induced Plaintiffs to sign them. They assert that "Plaintiff[s] w[ere] induced into entering an alleged agreement to Defendants' salesmen's representations that the lease was a good deal and the salesmen's concealment of the fact that the credit card swiping machines were worth less than $500." Opp'n at 8 (citing J. Cream, Jr. Decl. ¶ 3). From this statement and Joseph Cream's supporting Declaration, there is no indication that all Plaintiffs were fraudulently induced to accept the contract, only some indication that one of Defendants' salespeople convinced Joseph Cream that "the lease" (he does not state which) was "a good deal" despite the fact that the equipment was available for purchase at a lesser price. *See* J. Cream, Jr. Decl. ¶ 3. While the FAC contains some discussion about the nature of the alleged fraud, Plaintiffs provided no other support for this theory.

Plaintiffs' concealment and fraudulent inducement arguments are unpersuasive, as their

8

1    evidence is insufficient to establish that Defendants deliberately concealed the terms of the

2    contract from Plaintiffs or fraudulently induced Plaintiffs to accept the forum selection clause.  To

3    prove a claim of a claim of fraudulent inducement, a plaintiff must show (a) a misrepresentation,

4    false representation, concealment or nondisclosure; (b) knowledge of falsity; (c) intent to defraud

5    or to induce plaintiff to enter into a contract; (d) justifiable reliance; and (e) resulting damage.  *See*

6    *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  Plaintiffs do not provide any indication that

7    Defendants concealed from them that the equipment was available for less money than the lease,

8    or that Defendants knew this fact.  Nor do they show that Plaintiffs' reliance was justified.  While

9    it is possible that Plaintiffs could ultimately provide such evidence in support of their fraudulent

10   inducement theory, they have not done so at this time.  Accordingly, for purposes of this motion,

11   Plaintiffs' fraudulent inducement claim does not prevent the enforcement of the forum-selection

12   clauses.

13        Nor have Plaintiffs shown that the leases they signed somehow concealed the forum-

14   selection clauses.  Even if, as alleged in the Complaint, Plaintiffs only saw and signed the first

15   page of these lease agreements (*see* FAC at 6-7[3]), the first pages of the lease agreements include

16   mandatory forum-selection clauses.  *See, e.g.*, Kravic Decl., Ex. A ("The undersigned agrees and

17   consents the Court of the State of Illinois having jurisdiction in Cook County or any Federal

18   District Court having jurisdiction in said county shall have jurisdiction and shall be the proper

19   venue for the determination of all controversies and disputes arising hereunder."); Exs. A-E

20   ("THE UNDERSIGNED WAIVES . . . ANY OBJECTION ARISING OUT OF THIS LEASE OR

21   GUARANTY BEING VENUED IN THE STATE OF NEW YORK, NEW YORK COUNTY.");

22   Ex. F-N[4] ("ALL DISPUTES RELATING TO THIS GUARANTY SHALL BE LITIGATED

23   EXCLUSIVELY IN THE FEDERAL OR STATE COURTS LOCATED IN THE STATE AND

24

25   [3] Plaintiffs' FAC alleges: "To facilitate this fraudulent scheme, Defendants drafted the Lease and
     Personal Guaranty such that Plaintiffs have to sign on the very first page of the Lease and Personal

26   Guaranty.  Since the signature of parties to a document are usually at the end of the document,
     Plaintiffs was [sic] led to believe that the Lease and Personal Guaranty is a one page document

27   containing all the terms of the lease."  FAC at 6-7.

28   [4] Ex. N's forum-selection clause is not written in capitalized lettering.

COUNTY OF NEW YORK . . . .").  Defendants further point out that several of the leases show that Plaintiffs initialed each page of the lease, including the pages which contain the full forum-selection clauses.  *See* Reply at 3.  Although Joseph Cream stated in his declaration that "at least one of the alleged signatures does not appear" to be his, he provides no explanation as to why he believes this to be true or which of the contracts he believes to be forged.[5]  Nor does he provide any suggestion that he never saw the forum-selection clauses on the numerous agreements he signed.

The issue then is whether the Court must take further action at this stage to resolve this dispute.  The Court concludes it does not.  As this Court recognized in *SeeComm Network Services Corp. v. Colt Telecommunications*, "[t]o hold that the Forum-Selection Clause is invalid because the contract as a whole is invalid—as a result of a unilateral mistake or because of fraudulent inducement in entering the contract—requires the Court to assess the merits of the case." 2004 WL 1960174, at *4 (N.D. Cal. Sept. 3, 2004).  The Court noted that such an analysis was "clearly backwards" as the question before the Court was "the validity of the Forum-Selection Clause, not the validity of the contract as a whole."  *Id.* at *4-5.  As the plaintiff in that case made no arguments and produced no evidence to support a finding that the forum-selection clause was incorporated into the contract as a result of fraud, the Court found that the plaintiff's broader arguments regarding fraudulent enticement as to signing the entire agreement had no place in the enforceability analysis for a forum-selection clause.  *Id.* at *6.

Other courts have similarly rejected forum selection arguments that embrace "the ultimate issue" and refused to "determine the validity of the entire contract merely to resolve a defendant's venue claim under § 1404(a)."  *CoActiv Capital Partners, Inc. v. Feathers*, 2009 WL 1911673, at *4 (E.D. Pa. July 1, 2009); *Melissa's Trust v. Seton*, 2014 WL 3811241, at *8 (N.D. Ill. July 31,

---

[5] The FAC alleges that the signatures on Leases 1602302, 1687926, 1695605A, and 1725264A "do[] not appear to be that of Plaintiffs[.]"  FAC at 11-13.  However, Plaintiffs, either in their Opposition, FAC, or Joseph Cream's Declaration fail to provide an explanation as to why they believe those signatures do not belong to Joseph Cream or Cathy Cream.  Nor is there any confirmation in Plaintiffs' Opposition or supporting documents that the suspicious lease agreements referenced in the FAC are same documents as provided by Defendants in their exhibits.

2014) (finding that determining the validity of the entire contract merely to resolve the venue claim "would be both circular and improvident." (citing *CoActive*, 2009 WL 1911673, at *4)). Similarly, in a footnote, the Supreme Court indicated that in determining a § 1404(a) motion, courts should not engage in a full merits-based analysis. *See Atl. Marine Const.*, 134 S. Ct. at 580 n.4 (observing that "a motion under Rule 12(b)(6), *unlike a motion under § 1404(a)* . . . , may lead to a jury trial on venue if issues of material fact relating to the validity of the forum-selection clause arise." (emphasis added)). The Court thus notes that even if they could use Rule 12(b)(6) to enforce a forum-selection clause, "defendants would have sensible reasons to invoke § 1404(a) . . . in addition to Rule 12(b)(6)." *Id.* at 580 & n.4.

Because the Court finds it imprudent to engage in a merits-based analysis of Plaintiffs' fraudulent inducement claim, and Plaintiffs have not otherwise shown that Defendants incorporated these forum-selection clauses as a result of fraud, the Court finds that Plaintiffs' concealment and fraudulent inducement arguments fail to make the forum-selection clauses unenforceable.

**B.      Contravention of Public Policy**

Plaintiffs then turn to the second *Bremen* factor, noting that "[w]here enforcement of a forum-selection clause would contravene a strong public policy of the forum, enforcement is unreasonable." Opp'n at 9 (citing *Bremen*, 407 U.S. at 15). Plaintiffs contend they are small business owners doing business only in Northern California, and that "[b]ecause of the limited financial means of Plaintiffs" and "the distance from California to New York, the New York forum-selection clause essentially deprives Plaintiff of a meaningful day in court." *Id.* (emphasis omitted). Plaintiffs provide no evidence of their financial means or how the distance to New York burdens them.

In any case, Plaintiffs cite the Ninth Circuit's decision in *Murphy v. Schneider National, Inc.*, for the proposition that the Court may consider the challenging party's "financial ability to bear [the] costs and inconvenience of litigating in the forum selected by the contract." 362 F.3d 1133, 1140-41 (9th Cir. 2004) (quotation marks omitted; alteration in original). However, as noted above, a valid forum-selection clause alters the § 1404 analysis in that a court evaluating a

11

defendant's § 1404(a) motion based on a forum-selection clause should not consider arguments about the parties' private interests. *Atl. Mar. Constr.*, 134 S.Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* Consequently, courts in this District have found that considerations of the financial costs and inconvenience of litigating in a distant forum are the sorts of "private-interest factors" that may not be considered in analyzing whether a forum selection clause is reasonable. *See Monastiero v. appMobi, Inc.*, 2014 WL 1991564, at \*5 (N.D. Cal. May 15, 2014); *Adema Techs. Inc. v. Wacker Chemie AG*, 2014 WL 3615799, at \*5 (N.D. Cal. July 22, 2014). "As a consequence, a district court may consider arguments about public-interest factors only[,]" and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Const.*, 134 S. Ct. at 582. Accordingly, the Court finds Plaintiffs' private interest factors also fail to make the forum selection clauses unenforceable.

Plaintiffs provide no argument as to whether the forum-selection clauses contravene public policy. Nor do they provide any other arguments under the *Bremen* factors or otherwise as to why the forum-selection clauses should not be enforced.[6]

## CONCLUSION

In light of the foregoing analysis, the Court **DENIES** Defendants' Motion to Dismiss but **GRANTS** Defendants' request to transfer. However, the Court **STAYS** transfer of this motion pending resolution of the following issue. Specifically, one of Joseph Cream's agreements states that he consents to "the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in said county," (Kravic Decl., Ex. A), whereas all other agreements—including the other agreements signed by Mr. Cream—select New York as the

---

[6] For example, there are no claims that that the forum-selection clauses are part of adhesion contracts. *See Brooks v. Sotheby's*, 2013 WL 3339356, at \*5 (N.D. Cal. July 1, 2013) (considering whether the forum-selection clause in an adhesion contract was reasonably communicated to the plaintiff).

intended forum. Given this situation, the Court requires supplemental briefing from the parties addressing whether to sever this one claim under the agreement at Exhibit A or whether the parties can agree to allow Mr. Cream's claims related to Exhibit A to proceed along with his other claims in New York, if desired. The parties shall meet and confer to determine whether they are able to reach an agreement on this issue. If so, the parties shall file a stipulation and proposed order **by August 10, 2015**. If the parties are unable to reach an agreement, Plaintiffs shall file a response **by August 14, 2015**, with Defendants' reply due **by August 21, 2015**.

      **IT IS SO ORDERED.**

Dated: July 31, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge